Sam GUTHRIE, Petitioner-Appellant and Cross-Respondent,†

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION, Respondent and Cross-Appellant.†

Court of Appeals

*No. 81–773. Argued January 28, 1982.—Decided April 13, 1982.*
(Also reported in 320 N.W.2d 213.)

† Petition to review granted. ABRAHAMSON and DAY, JJ., took no part.

For the petitioner-appellant and cross-respondent there was a brief by *Thomas M. Jacobson* of *Jacobson, Sodos, Melnick & Krings* of Milwaukee and *Alan S. Brostoff* of Milwaukee. Oral argument by *Thomas M. Jacobson.*

For the respondent and cross-appellant there was a brief by *Bronson C. La Follette,* attorney general, and *John D. Niemisto,* assistant attorney general. Oral argument by *John D. Niemisto.*

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.   Sam Guthrie appeals from a final order of the Dane county circuit court which denied his request for attorney's fees. At issue is whether the circuit court erred as a matter of law in not granting attorney's fees to Guthrie in his action against the Wisconsin Employment Relations Committee (WERC) for violating his due process rights. This court finds no authority which would allow recovery of attorney's fees against the WERC, and we affirm the trial court on that issue.

The WERC cross-appeals from the same circuit court order which reversed a WERC order and remanded the matter to the WERC for further consideration of the merits. On cross-appeal, we are asked to decide whether a substantial showing of the appearance of impropriety furnishes proper grounds for disqualifying an administrative judge. We hold that it may. We also find sufficient evidence in the circuit court's hearing on the procedures used to affirm its action in disqualifying the administrative judge. Accordingly, we affirm the circuit court on this issue as well.

The procedural history and facts of this case date back almost ten years. Guthrie was fired by his employer, the

University of Wisconsin-Milwaukee, on July 14, 1972. At that time, he was employed as a building maintenance helper. Following his discharge, Guthrie had the union take his grievance through the first three steps of the contract grievance procedure. The grievance was denied, and the union refused Guthrie's request to take the matter to arbitration. In response, Guthrie filed an unfair labor practice complaint with the WERC. He stated two causes of action. In the first cause of action, he alleged that he was discharged without just cause by the university in violation of his contract. In the second cause of action, he alleged that the union breached its duty of fair representation by failing to proceed to arbitration.

On January 30, 1973, the WERC conducted the first administrative hearing on this case. At the close of the hearing, the university requested that a ruling be made on the fair representation issue first. Guthrie and the union objected, and, on March 12, 1973, the examiner denied the university's request. The university moved for summary judgment following the denial, and this was also denied by the examiner. The university then requested a review of the examiner's ruling before the full commission. The commission affirmed the examiner, and the university petitioned the circuit court of Dane county for review of the commission's decision. The circuit court granted the commission's motion to dismiss, and the university appealed the court's decision to the Wisconsin Supreme Court. On this procedural appeal, Charles Hoornstra represented the WERC. Hoornstra consulted with Thomas M. Jacobson, the attorney for Guthrie, before arguing before the supreme court. The supreme court affirmed the decision of the circuit court, and the case was returned to the commission for further hearings.

On December 23, 1975, hearing examiner Marvin L. Schurke issued a decision favorable to Guthrie on both

claims. The commission ordered the union to pay Guthrie his reasonable attorney's fees and costs incurred in the prosecution of the administrative action before the WERC. Both the union and the university petitioned the commission for review of Schurke's decision. By the time the commission considered the examiner's decision, Charles Hoornstra had become a member of the commission. On December 16, 1977, the commission issued revised findings of fact, amended conclusions of law and an amended order. The commissioners concluded that although the union had breached its duty of fair representation, the basis of the breach was technical. Consequently, the agency reduced the amount Guthrie could recover for attorney's fees and costs to a nominal sum. The commission also ruled that the university had just cause to discharge Guthrie; therefore, the university did not violate Guthrie's contract. Before issuing the amended order, the commissioners discussed the findings of fact and conclusions of law with former hearing examiner Schurke, as they were required to do by law.

Guthrie then sought review in the circuit court for Dane county. Guthrie's petition for review alleged procedural irregularities by the WERC. First, he claimed that it was improper for Hoornstra to have represented the WERC's position, as well as Guthrie's position, on the procedural issue before the supreme court and later to have acted as a commissioner reviewing the hearing examiner's decision. Additionally, Guthrie pointed out other potential conflicts of interest on Hoornstra's part. He noted that before becoming a commissioner, Hoornstra had been a member of the Attorney General's office and had represented the university in several labor-related cases. During the time that Hoornstra was a commissioner, he was negotiating with the Attorney General's office to return to his former position. After issuing the amended decision in Guthrie's case, Hoornstra

returned to the Attorney General's office and again represented the university in labor-related cases.

The circuit court ruled that there was no factual record to sustain the inference that Hoornstra stood to profit in any way from his decision in the Guthrie case. However, the circuit court also stated that:

Three troubling facts remain: (1) Hoornstra participated as counsel for the Commission in litigation concerning the instant controversy and also sat as a member of the Commission when it ultimately decided the case on the merits; (2) both before and after his tenure as commissioner Hoornstra represented the university in labor-related cases in the course of his employment with the attorney general; and (3) Hoornstra was actively negotiating his return to those duties at the time of the Commission's decision, a decision adverse to Guthrie and favorable to his former and future client. While it may be said that each of these factors standing alone would be insufficient to overcome the presumption of procedural regularity, when taken together they create an impression, if not an inference, of impropriety.

Accordingly, the court remanded the matter to the commission for further consideration.

We first consider the cross-appeal related to Hoornstra's impartiality and the circuit court's finding that Hoornstra should not have sat as an administrative judge in this appeal. The WERC first argues that Guthrie waived his right to object to Hoornstra's participation in the commission's decision. We cannot agree.

A waiver is a voluntary relinquishment of a known right. *Schroeder v. American National Red Cross*, 215 Wis. 54, 60, 254 N.W. 371, 373 (1934). At issue here is Guthrie's right to object to Hoornstra's participation in the commission's decision. At the time the WERC issued a decision in his case, Guthrie knew of Hoornstra's prior affiliation with the Attorney General's office and his

participation in the procedural appeal in this case. However, he was not aware that Hoornstra was negotiating a return to the Attorney General's office at the same time he was considering this appeal.[1] We believe that Hoornstra's prior employment with the attorney general and his prior involvement as an attorney in this case took on additional meaning when it was discovered he was negotiating a return to the Attorney General's office. Consequently, we hold that Guthrie did not have full knowledge of the facts at the time Hoornstra was a member of the commission reviewing his case. For this reason, Guthrie did not waive his right to object to Hoornstra's participation as an administrative judge in his case.

The WERC contends that in order to show that Hoornstra should have been disqualified from hearing this case, Guthrie must establish that Hoornstra was not impartial. To establish partiality, the WERC argues that Guthrie must prove Hoornstra's bias, prejudice or interest in the outcome. This court believes that an administrative judge may be disqualified on other grounds.

Specifically, we are concerned with whether or not a strong appearance of impropriety may furnish grounds for disqualifying an administrative judge. Wisconsin courts have not dealt directly with this issue, so we look to the decisions of other courts for guidance.

The Washington courts have considered this issue on several occasions. They have held that "hearings . . . must not only be fair in fact, but must appear to be fair and *to be free of an aura of* partiality, *impropriety,* conflict of interest, or prejudgment." *Hayden v. City of Port Townsend,* 622 P.2d 1291, 1293 (Wash. App. 1981) (emphasis added). To prevent such situations, Wash-

---

[1] Although Hoornstra claims that he had an absolute right to return to the Attorney General's office, his job assignment and his date of return had to be determined.

ington courts have developed the "appearance of fairness" doctrine. The doctrine was designed to maintain the public confidence in the just, disinterested decisions of public agencies. *Fleck v. King County*, 558 P.2d 254, 257 (Wash. App. 1977).

The test used to judge if the doctrine has been violated is whether a disinterested person, being apprised of the totality of a board member's personal interest in a matter being acted upon, would be reasonably justified in thinking partiality may exist. *Hill v. Department of Labor and Industries*, 580 P.2d 636, 640 (Wash. 1978). "The doctrine reaches the *appearance of impropriety*, not just its actual presence." *Hayden*, 622 P.2d at 1294 (emphasis added).

Other state courts have been equally cognizant of the problem. The Superior Court of New Jersey, Appellate Division has held:

> The position of a member of the bar who also serves the public in a *quasi*-judicial capacity such as the one here concerned is one of extreme sensitivity and great responsibility. A compelling public interest dictates that the attorney should not place himself in a situation which harbors a temptation to serve his own interest or that of a client to the prejudice of those for whom the law authorizes him to act as a public official. *Cf. Aldom v. Borough of Roseland*, [127 A.2d 190 (N.J. Super. Ct. App. Div. 1956)]. *It is of perhaps equal importance that he should not be placed in a position which, in the eyes of the public, presents the opportunity of such a risk.* "[W]here the public confidence is at issue, what people think is true may be as important as what is true." *Reilly v. Ozzard*, 33 N.J. 529, 554, 166 A.2d 360, 373, 89 A.L.R.2d 612 (1960) (dissenting opinion).

*Board of Education v. International Union of Operating Engineers, Local No. 68*, 262 A.2d 426, 430 (N.J. Super. Ct. App. Div. 1970) (emphasis added).

In reaching its decision, the circuit court was obviously very concerned with the appearance of fairness and

the public policy reasons why such a doctrine must exist. It ruled:

The obvious purpose of "fair play" principles is to preserve the integrity of the judicial (or quasi-judicial) process. Such integrity not only fosters (one hopes) wise decision-making, but also forms the basis for public confidence in an institution designed to secure social harmony by providing an impartial tribunal for the resolution of labor disputes. While the law as administered by courts and administrative agencies does not value form over substance, there are instances when outward appearances, whether perceived by individual litigants or the public generally, assume an importance which transcends the *de facto* operations of the institution or agency. This is so, in part at least, because the continued effectiveness of judicial and quasi-judicial organizations rests upon the confidence of the public in their ability to act as instrumentalities of justice. It probably is true, as Lord Herschell remarked: "Important as it is that people should get justice, it is even more important that they be made to feel and see that they are getting it."

This court holds that where a compelling appearance of impropriety on the part of the administrative judge is present, that administrative judge should be disqualified. A compelling appearance of impropriety may be proved by a single egregious act which creates severe suspicion of the administrative procedure. It may also exist where a number of acts, not individually as egregious in nature, together have a cumulative impact of eroding public trust in an administrative agency. We do not hold that every showing of the appearance of impropriety should disqualify an administrative judge. The particular facts of each individual case will determine whether the appearance of impropriety is so compelling that it must result in the disqualification of the administrative judge.

The final question left in our inquiry on this issue is whether sufficient evidence supports a compelling appearance of impropriety. Ordinarily when a circuit court reviews an administrative agency, it acts in the capacity of a reviewing court. Sec. 227.15, Stats. The circuit court's review is generally confined to the record established before the agency. Sec. 227.20(1), Stats. However, when alleged irregularities in the procedure before the agency exist, the circuit court may take testimony probative of the alleged irregularities. *Id.* When it rules on the alleged irregularities, it is making findings of fact.

Typically, this court's scope of review of a circuit court order reversing or modifying an administrative agency's order is identical to that of the circuit court. *Boynton Cab Co. v. Department of Industry, Labor & Human Relations,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). Questions of law, including the construction, interpretation or application of a statute are reviewable *ab initio. Department of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 48, 257 N.W.2d 855, 858 (1977). Findings of fact of the agency will not be set aside if supported by substantial evidence. *Boynton Cab Co. v. Department of Industry, Labor & Human Relations,* 96 Wis. 2d at 405, 291 N.W.2d at 855. However, here we are reviewing findings of fact made by the circuit court after a hearing it held related to the administrative procedures used. The circuit court found from the evidence before it that Hoornstra's involvement in Guthrie's case created a strong suggestion of impropriety which was "on a par with actual impropriety."

This factual finding came after the circuit court heard the testimony of several witnesses. Because of this, we

believe that the circuit court was acting as a trier of fact.

[W]hen the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. *When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.*

*Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 250, 274 N.W.2d 647, 650 (1979) (emphasis added, citations omitted).

The circuit court cited facts which created the impression of impropriety. They were Hoornstra's participation in this case as both counsel and an administrative judge, Hoornstra's representation of the university in labor-related cases both before and after his tenure with the WERC, and Hoornstra's acts of negotiating a return to those duties while he was deciding Guthrie's case. These facts provide ample credible evidence indicating that the circuit court's decision was not against the great weight and clear preponderance of the evidence. We affirm the circuit court's order remanding the case to the WERC for further consideration.

Guthrie's appeal contends that the circuit court erred by not granting him attorney's fees against the WERC. Among other arguments, Guthrie contends that such an award is authorized by sec. 227.20(9), Stats., which declares:

(9) The court's decision shall provide whatever relief is appropriate irrespective of the original form of the petition. If the court sets aside agency action or remands the case to the agency for further proceedings, it may make such interlocutory order as it finds necessary to preserve the interests of any party and the public pending further proceedings or agency action.

Guthrie argues that the language saying that the court "shall provide whatever relief is appropriate" authorizes attorney's fees. We do not agree.

The Wisconsin Supreme Court has held that "costs may not be taxed against the state or an administrative agency of the state unless expressly authorized by statute." *Martineau v. State Conservation Commission,* 54 Wis. 2d 76, 79, 194 N.W.2d 664, 666 (1972). Statutes allowing costs are in derogation of the common law and should be strictly construed. *Id.* at 80, 194 N.W.2d at 666. This court does not view the language "provide whatever relief is appropriate" as clearly allowing attorney's fees. Absent such a clear expression, a party cannot recover attorney's fees against the state. We affirm the circuit court on this issue of attorney's fees, also.

*By the Court.*—Order affirmed.