Sam GUTHRIE, Petitioner-Appellant and
Cross-Respondent,

v.

WISCONSIN EMPLOYMENT RELATIONS COMMISSION,
Respondent and Cross-Appellant-Petitioner.

Supreme Court

*No. 81–773. Argued February 2, 1983.—Decided March 29, 1983.*

(Also reported in 331 N.W.2d 331.)

For the respondent-petitioner the cause was argued
by *John D. Niemisto,* assistant attorney general, with
whom on the briefs was *Bronson C. La Follette,* attorney
general.

For the appellant-cross-respondent there was a brief
by *Alan S. Brostoff, Thomas M. Jacobson* and *Jacobson,
Sodos & Krings, S.C.,* all of Milwaukee, and oral argu-
ment by *Thomas M. Jacobson.*

HEFFERNAN, J. This is a review of a decision of the court of appeals[1] which affirmed an order of the circuit court for Dane county, WILLIAM F. EICH, Circuit Judge.

The question on this review is whether an order of a quasi-judicial administrative tribunal conforms to the constitutional requirements of due process when one of the members of the adjudicative tribunal had, at an earlier stage of the same proceedings, served as counsel for one of the parties.

The question arises because Charles D. Hoornstra, as assistant attorney general, represented the WERC in this case in proceedings during 1974 and later in 1977 sat as a WERC commissioner in issuing the order that is the subject of this review.

We conclude that an order issued by a tribunal so constituted violates due process and cannot be sustained. We affirm the decision of the court of appeals which affirmed the circuit court's remand of the case to the WERC for further consideration.

More than ten years have elapsed since Sam Guthrie was discharged as a maintenance worker at the University of Wisconsin-Milwaukee on July 14, 1972. In November of that year he filed a complaint with the Wisconsin Employment Relations Commission alleging that his employer had discharged him without "just cause" and that his union, which had the duty to represent him, had failed to afford him "fair representation."

Hearings were held before a WERC examiner on Guthrie's complaint on January 30, 1973. Both the union and the university moved to dismiss the complaint. That motion was denied. The university then moved that the question of the union's duty of fair representation be decided prior to the consideration of whether there was "just cause" for Guthrie's discharge.

[1] 107 Wis. 2d 306, 320 N.W.2d 213 (1982).

Both Guthrie and the union objected to the university's motion. The motion was denied by the WERC examiner, as was the university's motion for declaratory judgment which followed.[2] The denial of the declaratory judgment was affirmed by the full commission. At this point, the university commenced an action in the circuit court for Dane county to review the commission's decision. That court granted the commission's motion to dismiss, and that order of dismissal was affirmed upon appeal by this court in *State v. WERC*, 65 Wis. 2d 624, 223 N.W.2d 543 (1974).

It was at these proceedings in the circuit court for Dane county and in the subsequent appeal to this court that the WERC was represented by Assistant Attorney General Charles D. Hoornstra. Guthrie was represented by Attorney Thomas M. Jacobson. The record shows, however, that Guthrie, the WERC, and the union were allied against the position of the university. It was conceded that the brief in behalf of the WERC, the union, and Guthrie was drafted and signed by Hoornstra and joined in by Guthrie and his union.

The circuit court in the proceeding now before this court made the finding of fact that Hoornstra actively participated in the present litigation as attorney of record for the commission in the university's 1974 appeal to this court and as co-counsel to the attorneys for the union

---

[2] According to *State v. WERC*, 65 Wis. 2d 624, 633, 223 N.W. 2d 543 (1974), the substance of the declaratory judgment sought by the university was a declaration that:

"The procedure requested to be recognized would require the WERC to dismiss a complaint in a case like this if the employee fails to allege and prove that the employer prevented the employee from utilizing the contractual grievance procedure and that where the employee alleges unfair representation by the union and violation of the collective bargaining agreement by the employer, the employee must first prove and the WERC must first determine the unfair representation question prior to a hearing on the merits of the charge against the employer."

and Guthrie. Hoornstra not only prepared the joint Supreme Court brief but also orally argued the case for the commission.

This court in 1974 affirmed the circuit court's dismissal of the university's appeal, and the matter was remanded to the WERC for further proceedings. After further hearings, the examiner for the WERC in December of 1975, issued a decision finding that Guthrie was denied fair representation by his union and was unjustly discharged by the university.

Both the university and the union then petitioned the full commission for review of the examiner's order holding for Guthrie.

On December 16, 1977, the WERC, over the signatures of two of its three commissioners, Morris Slavney and Charles D. Hoornstra, issued amended findings of fact, amended conclusions of law, and an amended order holding that the university had just cause for the discharge of Sam Guthrie.[3]

On the appeal from that 1977 order, the circuit court found that Hoornstra, an assistant attorney general prior to his appointment to the commission, had appeared in the case in proceedings before this court. The circuit court stated:

"Hoornstra actively participated in the present litigation as the attorney of record for the Commission in the University's 1974 appeal to the Supreme Court."[4]

[3] It also made the examiner's order less favorable to Guthrie by reducing the amount of the award for failure to afford proper representation.

[4] Although Hoornstra, at one point in the circuit court's memorandum decision of December 23, 1980, is referred to as representing the university, it is clear that this reference is the result of a clerical error or omission. The record demonstrates that, in fact, Hoornstra was representing the WERC and the parallel interests, at that juncture, of Guthrie and his union.

The circuit court then found that:

"Subsequently, after taking office as a commissioner, [Hoornstra] participated in (and drafted) the Commission's decision on the merits."

It is the order that emanated from the commission over the signatures of Hoornstra and Slavney that is the subject of the instant review.

Following the 1977 order of the WERC, concluding that the university had just cause to discharge Guthrie and that the union's failure to afford fair representation was of a technical nature only, Guthrie brought an action for review of this determination on the merits in the circuit court for Dane county. Among other allegations of error, he asked for reversal and remand on the ground that Hoornstra's conduct violated Guthrie's due process right to have his case determined by an impartial decisionmaker.

The facts set forth above, gleaned from the record, are not contested by the commission, but the WERC insists that, absent a showing of bias or pecuniary interest in the outcome, a decisionmaker should not be disqualified. The facts of record did not show that Hoornstra had any actual bias, and there was no inference that could be drawn that Hoornstra stood to profit from the commission's decision in the case.

After taking testimony in respect to Hoornstra's participation in the 1974 proceedings and appeal, the circuit court found no evidence that Hoornstra's earlier activities in the case tainted the commission's decision. In fact, the circuit judge stated that Hoornstra's record and his many appearances in the Dane county circuit court, "have led me to place the highest respect and confidence in his integrity as a lawyer and administrator."

Thus, the trial court found not a shred of evidence that would point to any partiality or bias, in fact, by Hoornstra. Nevertheless, the circuit court held:

"But more is demanded, I feel, from all of us who participate as decision-makers in the legal/administrative process. The choices frequently are neither easy nor obvious, but unless we undertake our responsibilities with the recognition that in instances such as this the suggestion of impropriety is on a par with actual impropriety, the confidence of the litigants and the general public in the process will falter, and, in the long run, the effectiveness of the agency and the system itself will be diminished."

The circuit court accordingly ordered a remand to the commission pursuant to sec. 227.20(4), Stats.[5]

On the appeal of the WERC, the court of appeals affirmed. It agreed, as it was obliged to in view of the evidence and trial court findings, that there was no inference of actual bias, partiality, or interest in the outcome. The WERC argued in the court of appeals that only if such inference could be reached could an administrative judge be found disqualified. The court of appeals concluded, however, that the existence of facts that gave the "appearance of impropriety" would lead to disqualification. The court of appeals said:

"This court holds that where a compelling appearance of impropriety on the part of the administrative judge is present, that administrative judge should be disqualified." P. 314.

The court of appeals then analyzed the circuit court's findings that Hoornstra had participated in the case as "both counsel and an administrative judge."[6]

---

[5] "Sec. 227.20(4). The court shall remand the case to the agency for further action if it finds that either the fairness of the proceedings or the correctness of the action has been impaired by a material error in procedure or a failure to follow prescribed procedure."

[6] The court of appeals also relied upon Hoornstra's prior and subsequent representation of the university in his capacity as assistant attorney general—a position which he re-assumed shortly

Like the circuit court, the court of appeals found that Hoornstra, by his prior conduct, was disqualified to sit in this case as a decisionmaker. Like the circuit court, it found no necessity to find actual bias or partiality. A "compelling appearance of impropriety," it held, was enough. While the WERC has asserted that Guthrie waived whatever objection he had to Hoornstra as a deciding commissioner because he knew that Hoornstra had earlier participated as counsel in the proceeding and yet made no objection, we accept the determination of the court of appeals that there was no waiver. It is obvious, moreover, that this case was not taken on review by this court to determine that routine question. Rather, it was taken because of the attorney general's assertion—his principal assertion in urging that we accept the case for review—that "[t]he issue of whether an appearance of impropriety impairs the fairness of an administrative hearing is one of first impression" and "will have statewide ramifications."

We accordingly do not reconsider the waiver question which was appropriately dealt with by the court of appeals. At best, the issue of waiver is an evidentiary matter, which was decided on appeal; and, as such matter, we will not ordinarily grant further review.[7]

---

after the WERC decision in this case. We do not further allude to those facts, although they are undisputed, for we base our holding only on the undisputed fact that Hoornstra did appear as counsel in the very case on which he later sat as an adjudicative officer.

[7] It should be noted that sec. 757.19, Stats., **Disqualification of Judge**, in its reference to parties' waiver of disqualification, provides that, where there are disqualifying factors, they may be waived "by *agreement* of all parties." (Emphasis supplied.) Sec. 757.19(3). The statute appears to exclude waiver by mere failure to object. We recognize, however, that it is contrary to general principles of court administration to permit a party to proceed in the face of full knowledge of a cause for objection and then to allow an initial objection only when the proceeding has produced an untoward result.

While we agree with the decision of the court of appeals that the order of the WERC was fatally tainted by Hoornstra's participation as counsel and that the trial court's remand to the commission be affirmed, we do so on a different basis.

The court of appeals and the trial court both referred to "fair play" and to the need for the perception of fairness in judicial or quasi-judicial proceedings. The trial court at one point in its memorandum decision referred to "due process" or "fair play." This language smacks of a constitutional due process analysis, but neither court explicitly placed its holding on due process. What only is implicit in the opinions of the trial court and court of appeals, we conclude, should be made explicit.

It is, of course, undisputable that a minimal rudiment of due process is a fair and impartial decisionmaker. *Goldberg v. Kelly,* 397 U.S. 254, 271 (1970). If a decisionmaker is not fair or is not impartial, due process is violated. The United States Supreme Court in *Withrow v. Larkin,* 421 U.S. 35, 46, quoting *In re Murchison,* 349 U.S. 133, 136 (1955), stated: "Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' " *Withrow* pointed out that the rule "applies to administrative agencies which adjudicate as well as to courts." P. 46.

This does not mean, however, that due process can be violated only when there is bias or unfairness in fact. There can also be a denial of due process when the risk of bias is impermissibly high. *Withrow* pointed out that not only is a biased decisionmaker unacceptable, but our system of law has always endeavored to prevent the probability of unfairness. *Withrow* identifies at least two such situations where the likelihood of bias is too high to be permissible even though there be the absence of bias or partiality in fact:

"Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. [footnotes omitted]." P. 47.

*Withrow* dealt with whether the combination of the investigatory and adjudicatory functions in a single tribunal necessarily creates an impermissible constitutional risk of bias. *Withrow* held that such combination of function was not necessarily impermissible and that there was a presumption of honesty and regularity in those serving as adjudicators that must be overcome. We adopted the reasoning of *Withrow* in *State ex rel. DeLuca v. Common Council,* 72 Wis. 2d 672, 242 N.W.2d 689 (1976).

We stated in *DeLuca* that there need not be a showing of actual bias by a decisionmaker to show a violation of due process; but, following the *Withrow* rationale, we relied on the presumption of honesty and integrity on the part of administrative adjudicators when the objection was to the merger of the investigatory and adjudicatory functions. We held that DeLuca failed to show special facts and circumstances to demonstrate that the risk of unfairness or bias was intolerably high. *See, DeLuca,* p. 692. The presumption of honesty and integrity in a similar merger of function case was invoked by the United States Supreme Court in *Hortonville Joint School Dist. v. Hortonville Ed. Ass'n,* 426 U.S. 482 (1976).

Although the common law did not ordinarily address the question of the disqualification of a decisionmaker in terms of due process, it frequently referred to the concept of fairness. The common law in respect to the disqualification of judges has not had much opportunity for development in Wisconsin, because we have had a fairly comprehensive statute in respect to disqualification almost from the inception of the state.

Sec. 20, ch. 87, 1849 Stats., provides:

"In case the judge of the circuit court shall be interested in any cause or causes pending in such court, or shall have acted as attorney, solicitor or counsel for either of the parties thereto, the said judge shall not have power to hear and determine such cause or causes, except by consent of the parties thereto; and upon motion, the said judge shall order a change of venue to an adjoining circuit, and the judge of said circuit shall hear and determine said cause or causes."

Nevertheless, this court has recognized the existence of a common law philosophy or position in respect to disqualification. In *Kachian v. Optometry Examining Board,* 44 Wis. 2d 1, 170 N.W.2d 743 (1969), one question posed was whether a member of the board could be disqualified in the absence of a statutory provision for disqualification. This court said:

"From the absence of a statutory mandate it does not follow that a person who is a member of an administrative agency may not or ought not disqualify himself from sitting in a case in which he has a direct financial interest or one which he cannot fairly decide. A common-law duty of disqualification applies where no statutory provisions for disqualification are spelled out." Pp. 12–13.

Despite the statutory provisions, the common law principles were discussed in some of the early Wisconsin cases. *See, Case v. Hoffman,* 100 Wis. 314, 75 N.W. 945 (1898), and *State ex rel. Cook v. Houser,* 122 Wis. 534, 100 N.W. 964 (1904). The court in the latter case pointed out that disqualification at common law applied only where there was a real and direct personal interest by the judge in respect to the result of the case or where there was a kinship relationship with one of the interested parties. Significantly, however, the court referred to the rigidly enforced common law principle that "no man can be a judge in his own case." P. 579. It would appear that, in a practical sense, a judge or decisionmaker who adjudicates a case in which he had earlier

participated as counsel is a judge in his own case. The Supreme Court Code of Judicial Ethics, SCR 60.03, Conflict of Interest, provides:

"A judge shall not exercise his or her duties with respect to any matter in which a near relative by blood or marriage is a party, has an interest or appears as a counsel. A judge shall not participate in any matter in which he or she has a significant financial interest or *in which he or she previously acted as counsel.*" (Emphasis supplied.)

The code of judicial ethics is enforceable by this court because of its constitutional and inherent superintending authority over courts and judges. *In re Kading*, 70 Wis. 2d 508, 515–18, 235 N.W.2d 409, rehearing den. 70 Wis. 2d 508, 238 N.W.2d 63 (1975) ; Art. VII, sec. 3(1), Wis. Const. That authority does not, however, extend to superintendence or direct supervisory authority over adjudicative officials who are appointees of the executive branch. Nor does the statutory provision for disqualification govern administrative adjudicators not in the judicial branch of government. Sec. 757.19(1), Stats., defines judges to include supreme court justices, court of appeals judges, circuit court judges, and municipal judges. By the provisions of sec. 757.19(2) (c), a judge is obligated to disqualify himself or herself when the judge has previously acted as counsel to any party in the same action or proceeding, but the statute does not specifically apply to adjudicators not defined in sec. 757.19(1).

Although neither of these specific standards for disqualification may be applied by this court in a direct supervisory or administrative capacity, this court undoubtedly has the authority to determine standards of due process in administrative procedures. Decisions which are violative of due process may be vacated under the general judicial authority. Accordingly, we conclude, consistent with general standards of due process, which require fair, im-

partial, and unbiased decisionmakers, that the standard of the common law and of our statutes, which mandate disqualification whenever a decisionmaker has acted as counsel to any party in the same action or proceeding, should be applied as a *per se* rule in applying the standards of due process. The adoption of such a rule—that automatic disqualification is mandated where the decisionmaker has previously acted as counsel—is completely consistent with the standards of *Withrow*, because it is a situation in which the risk of bias or partiality on the part of the decisionmaker is too high to be constitutionally tolerable. The test need not be whether there is a compelling appearance of impropriety, but merely the easily applied rule that prior representation of a party, in any way or degree, in the same proceedings results in disqualification.

This is consistent with cases in the federal courts involving administrative decisionmakers. In *American General Insurance Co. v. F.T.C.*, 589 F.2d 462 (9th Cir. 1979), the court reviewed an order of the Federal Trade Commission which found that the American General Insurance Company's acquisition of another company violated the Clayton Act. At an earlier stage of the proceedings, Calvin J. Collier, who was then general counsel for the F.T.C., appeared before the United States Court of Appeals and filed a brief arguing the applicability of the Clayton Act. Subsequently, Collier was appointed as a member of the Federal Trade Commission, and in that capacity wrote an opinion affirming the applicability of the Clayton Act in that very proceeding. The court concluded that Collier was disqualified from participating in the decision of the F.T.C. because of his prior participation in the same proceedings. The order of the F.T.C. was vacated and remanded. The court relied upon the common law principle that a party should not be the judge of his own case.

In *Trans World Airlines, Inc. v. Civil Aeronautics Board,* 254 F.2d 90 (D.C. Cir. 1958), the court stated:

"The fundamental requirements of fairness in the performance of [quasi-judicial] functions require at least that one who participates in a case on behalf of any party, whether actively or merely formally by being on pleadings or briefs, take no part in the decision of that case by any tribunal on which he may thereafter sit." P. 91.

In *Laird v. Tatum,* 409 U.S. 824 (1972), Mr. Justice Rehnquist filed a memorandum in response to a motion to recuse. Therein, he discusses standards relating to disqualification prepared at an earlier date by the Justice Department. Justice Rehnquist states:

"Its principal thrust is that a Justice Department official is disqualified [upon becoming a judge] if he either signs a pleading or brief or 'if he actively participated in any case even though he did not sign a pleading or brief.' I agree." P. 828.

The due process prohibition to act as a decisionmaker in respect to a matter in which the decisionmaker has previously served as counsel is emphasized by *James v. State,* 24 Wis. 2d 467, 129 N.W.2d 227 (1964). In that case the defendant had pleaded guilty to a charge of selling encumbered property. The information was signed by the then assistant district attorney, James Sitter. Sentence was withheld, and the defendant was placed on probation for two years. While still on probation, the defendant was brought before James Sitter, who had in the interim become a county judge, to answer to a charge of grand theft. The defendant pleaded guilty and was sentenced. Judge Sitter also sentenced the defendant to two years on the charge of transferring encumbered property, a charge on which sentencing had been withheld in the original proceedings. This court found that

Sitter was disqualified under the statutes from sentencing James on the encumbered-property charge because of his earlier participation in the same case as the prosecutor. Significantly, however, it went on to say, even had the statutes not specifically qualified him, he nevertheless would be disqualified because:

"Such disqualification would seem to be a part of the procedural due process embodied in the Fourteenth Amendment of the United States Constitution." P. 473.

The court further stated that, "The rule requiring disqualification operates whether the judge, in fact, is or is not biased or prejudiced." P. 473.

Accordingly, we conclude that due process is violated in circumstances where the decisionmaker has previously acted as counsel to any party in the same action or proceeding. There need be no proof of partiality or bias, but in such a circumstance the possibility of partiality or bias is too high to be constitutionally tolerable.

In the instant case, Hoornstra, in the earlier stages of the proceedings, represented the WERC, which clearly was not a party in interest in the adversarial sense. However, under the provisions of ch. 111, Stats., Employment Relations, representation of the commission entails the representation of a position identical with that of the parties in interest when those parties' positions are supported by a decision of the commission. *See,* secs. 111.07(8), 227.16(1)(b), and 227.16(1)(d), Stats. In the case before us in the proceedings in 1974 in this court, Hoornstra represented not only the commission but also represented Guthrie and Guthrie's labor union. He prepared and filed a brief on behalf of the union and also on behalf of Guthrie. This conduct mandates disqualification. Under the rule we adopt we need

not weigh or analyze the hazards implicit in a particular situation where the decisionmaker has represented one or more of the parties at an earlier time. The risk of unfairness is intolerably great, and we think it unproductive for this court to indulge in a case-by-case analysis of the extent to which a party may have been prejudiced in fact by such prior participation. We simply adopt the rule that, where there has been prior participation as counsel representing any party in any way in earlier proceedings, due process requires that the decisionmaker be disqualified and the decision must be vacated.[8]

Hoornstra was disqualified by his prior participation in the proceedings. We, therefore, affirm the decision of the court of appeals directing a remand to the WERC for further consideration.

*By the Court.*—Decision affirmed.

DAY and ABRAHAMSON, JJ., took no part.

---

[8] We do not in this case address the question of whether, by express agreement between the parties, a disqualification can be waived. Under sec. 757.19(3), Stats., a judicial disqualification may be waived by agreement of all the parties. The issue in respect to an administrative judge is not before us. It would appear that the waiver standards set forth in sec. 757.19 would be appropriate.