NOVA SERVICES, INC., Plaintiff-Appellant,

v.

VILLAGE OF SAUKVILLE, Defendant-Respondent.

Court of Appeals

*No. 96–2198. Submitted on briefs April 10, 1997.—Decided May 7, 1997.*

(Also reported in 565 N.W.2d 283.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Daniel L. Sargeant* of *Schloemer, Alderson, Spella & Muehlbauer, S.C.,* of West Bend.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Gerald H. Antoine* of *Huiras, Farrell & Antoine* of Port Washington.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J. It is undisputed by the parties that a municipal attorney may not serve as an advocate in an adversarial administrative hearing and then as an advisor to the tribunal. The Village of Saukville contends, however, that its attorney did not act as a prosecutor, but "merely conducted the hearing and elicited information from the witnesses." After reviewing the record, we conclude that the village attorney acted as both prosecutor in this adversarial proceeding and as advisor in a closed session to the village board. Because due process was violated, we

reverse and remand with directions that the board be required to hold a new hearing consistent with this opinion.

Nova Services, Inc., has operated a licensed group home for boys in the village since 1979. A few neighbors complained of acts by group home residents alleging trespass, vandalism, littering, loitering, excessive noise and general disorderly conduct. The village board held a hearing on the matter pursuant to § 62.23(7)(i), STATS. This statute provides that a municipality may order a "community living arrangement" to cease operations, unless special zoning permission is obtained, if it determines after a hearing that there exists a threat to the health, safety or welfare of the residents. The facts pertinent to the issue we deem to be dispositive are as follows.

At the outset of the hearing, the village attorney explained that the hearing was quasi-judicial. The village attorney introduced Nova's attorney and then stated in pertinent part that "[t]he proceeding will be treated as an adversarial hearing. . . . Witnesses will be subject to cross-examination. . . . The village will present its witnesses first, and then Nova Group Home will call its witnesses." The village attorney gave no opening statement, but Nova did. The village attorney then called the police chief of the village and conducted a direct examination which was followed by cross-examination by Nova. In like manner, direct examination was conducted by the village attorney of another officer and three complaining residents who were, in turn, cross-examined by Nova. At the conclusion of cross-examination of the third witness for the village, the village rested. Then Nova put on three witnesses of its own who were cross-examined by the village attorney. At the conclusion of the testimony, the

693

village attorney gave no summation, but Nova did. The village attorney did make a brief reply in which he sought to correct what he perceived to be an incorrect statement that had been made by Nova during its summation.

Then, significantly, Nova inquired as to whether the village attorney was planning to attend the closed deliberations. The village attorney said he was. Nova objected and commented that the village attorney had acted as a prosecuting attorney. Nova contended that it would be unfair for him to sit in the closed session without Nova's attorney sitting on behalf of Nova. The village attorney responded that he could sit in on a closed session since the "opposite side" had witnesses and had been able to conduct cross-examination. Nova's attorney replied that it objected to the village attorney wearing "two hats" and said that "[i]f there's going to be advice given of a legal nature to the Board during closed session, I think it should come from someone other than the person who prosecuted the complaint before the Board." When the village attorney said he was merely there to "let the Board make the decision," Nova complained that some of the village attorney's questions were very adversarial, to which the village attorney replied that this was because it was an "adversarial proceeding." The village attorney entered the closed deliberations with the board and the board ultimately voted to order Nova to cease operation unless special zoning permission was obtained. The circuit court upheld the board's actions and this appeal commenced.

In an action for certiorari review, appellate review is the same as in the circuit court. *See State ex rel. Wilson v. Schocker,* 142 Wis. 2d 179, 183, 418 N.W.2d 8,

9 (Ct. App. 1987). The factors to be considered on certiorari review are whether the board kept within its jurisdiction, whether it acted according to law, whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment, and whether the evidence was such that it might reasonably make the order or determination in question. *See Metropolitan Holding Co. v. Board of Rev.*, 173 Wis. 2d 626, 630, 495 N.W.2d 314, 316 (1993). The issue here tests whether the board acted according to law.

■

Nova repeats the assertion it made at the close of the hearing. It first points out that it is entitled to a fair and impartial hearing under the concepts of due process and fair play. It correctly cites *Stas v. Milwaukee County Civil Serv. Comm'n,* 75 Wis. 2d 465, 469–70, 249 N.W.2d 764, 767 (1976), for the proposition that due process requires that the prosecutorial aspects of administrative matters be adequately separated from the adjudicatory function; i.e., the prosecutorial and adjucatory functions should not merge. Nova observes that the basic reason why the same person should not be put in the position of acting as both prosecuting attorney and advisor to the board adjudicating the matter is that the attorney's activities in the former capacity may tend to influence his or her judgment while acting in the latter capacity. *See State ex rel. Ball v. McPhee,* 6 Wis. 2d 190, 210–11, 94 N.W.2d 711, 722 (1959), *overruled on other grounds by Stacy v. Ashland County Dep't of Public Welfare,* 39 Wis. 2d 595, 159 N.W.2d 630 (1968). The village does not dispute that this is the law.

Nova then contends that the prosecutorial and adjudicatory functions merged in this instance. It

argues that the village attorney did more than merely present the evidence. The village attorney explained at the beginning that this was an adversarial hearing. The complaining citizens were his witnesses. He did not cross-examine in a neutral manner, but vigorously questioned Nova's witnesses with pointed questions suggesting that at least one witness was being evasive. Nova asserts that the village attorney was doing what a good lawyer should do—zealously, but civilly, acting as an advocate. Nova then suggests that for the village attorney to contend that he could then "change hats" and guide a supposedly neutral board by recitation of an objective view of the evidence "strains credulity."

The village asks us to read the transcript differently. It characterizes its questioning as not so much an example of advocacy or bias on the complaining citizens' behalf as it was a means by which evidence could be clarified for the board and a mechanism for obtaining pertinent information for the tribunal. It points out that it never made an opening statement and never made a closing statement advocating one position over another.

We are satisfied that the village attorney did act as an advocate for closing the group home. The attorney announced at the beginning that the village would be presenting "its witnesses first." The complaining citizens were the village attorney's witnesses. The village attorney zealously cross-examined the group home's witnesses. And although the village attorney did not make either an opening or closing statement, we concur with Nova's observation that an impermissible risk exists for making comments similar to those found in closing arguments while in closed session.

We do not ascribe any unethical conduct on the part of the village attorney. At all times the village attorney was courteous, civil and professional. And it may well be that the attorney's advice in closed session was neutral. But the law states that due process and fair play may be violated when there is bias or unfairness in fact or when the risk of bias is impermissibly high. *See Marris v. City of Cedarburg,* 176 Wis. 2d 14, 25, 498 N.W.2d 842, 847 (1993). When an attorney represents a party in earlier proceedings, due process requires that the attorney not act as a decision-maker in the same case. *See Guthrie v. WERC,* 111 Wis. 2d 447, 452–54, 331 N.W.2d 331, 334 (1983). Here, we have held that the village attorney did act as prosecutor. The risk that the village attorney would continue in that adversarial role during closed session is impermissibly high. Decision-makers must be impartial and free from any chance of distorted judgment. *See Marris,* 176 Wis. 2d at 25–26, 498 N.W.2d at 847. We conclude that a new hearing is necessary and direct that while the village attorney may act as prosecutor, the board must hire another attorney to act as legal advisor during deliberations. We also echo the circuit court's statement urging that in the future, the village "scrupulously segregate" the two functions. We recognize that this was the first time the village has ever entertained a hearing under § 62.23(7)(i), STATS. But we are convinced that the law almost mandates that a municipality proceeding under this statute must take precautions so that the person prosecuting the action is not the same person advising the deliberative body. Finally, although other issues are raised by Nova, we do not address them.

*By the Court.*—Judgment reversed and cause remanded with directions.