Louis ZINK, Jr., Plaintiff-Appellant-Cross-Respondent,

v.

Akhatar KHWAJA and Berlin Cranberry Ltd.,
Defendants-Respondents-Cross-Appellants. †

Court of Appeals

*No. 99–0149. Submitted on briefs November 18,
1999.—Decided February 17, 2000.*

## 2000 WI App 58

(Also reported in 608 N.W.2d 394.)

†Petition to review denied.

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Glenn M. Stoddard* of *Garvey & Stoddard, S.C.,* Madison.

On behalf of the defendants-respondents-cross-appellants, the cause was submitted on the briefs of *William A. Metcalf* of *Metcalf & Quinn, S.C.,* Wisconsin Rapids.

Before Dykman, P.J., Eich and Deininger, JJ.

¶ 1.    DEININGER, J. Louis Zink appeals a judgment dismissing his nuisance claim against Akhtar Khwaja and Berlin Cranberry Ltd.[1] Zink contends that the circuit court erred when it determined that: (1) Zink failed to prove that Khwaja's cranberry operation had caused damage to his property; (2) Khwaja's actions in operating his cranberry farm were not unreasonable; and (3) Khwaja had acquired a prescriptive right to operate his cranberry farm in the manner in which it had been historically operated. We conclude that the circuit court did not clearly err in finding that Zink failed to prove that Khwaja's actions caused damage to his property. Because we conclude that the circuit court properly dismissed Zink's nuisance claim for that reason, we do not address Zink's remaining claims of error. Accordingly, we affirm the judgment in favor of Khwaja.

¶ 2.    Khwaja cross-appeals the circuit court's order denying him attorneys' fees under WIS. STAT. § 823.08(4) (1997–98).[2] According to Khwaja, the statute requires, without exception, that a defendant who successfully defends "any action in which an agricultural use or agricultural practice is alleged to be a nuisance" is entitled to recover his or her reasonable attorneys' fees from the plaintiff. See § 823.08(4). We agree, and accordingly, we reverse the cross-appealed

---

[1] Khwaja is the principal stockholder of Berlin Cranberry Ltd. Both are named as defendants, respondents and cross-appellants. We will refer to them collectively as "Khwaja," except where it is necessary to separately identify them

[2] We quote and discuss WIS. STAT. § 823.08 below, in the text of this opinion. All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

order and remand for the entry of an order consistent with the opinion which follows.

## BACKGROUND

¶ 3.   Khwaja and his predecessors have operated a commercial cranberry farm in the Berlin Marsh since the mid–1800's. During the late nineteenth or early twentieth centuries, a system of dams and dikes was constructed in and around the cranberry farm for the purpose of collecting ground and surface water and maintaining the bog-like environment that cranberries need to survive. In 1964, the majority of these dams and dikes were abandoned and a new dike structure was constructed. Since 1964, the water level of the cranberry bog has been primarily controlled by an outlet dam. This dam maintains the bog's water level at 756.90 feet MSL (mean sea level elevation).

¶ 4.   In 1964, Zink purchased approximately 280 acres adjacent to the western edge of the marsh and began using this land to raise cattle and grow crops. In the late 1970's, Zink began to experience "increased water build up" on the seventy acres of his land that are closest to the cranberry bog. This flooding prevented Zink from grazing cattle or growing crops on this land, and as a result he suffered damages. Zink believes the flooding occurred when the water that was being retained by the bog's outlet dam spilled over onto his property.

¶ 5.   In 1990, Akhtar Khwaja and Berlin Cranberry Ltd. acquired the cranberry operation. Khwaja continued to farm the cranberry bog and to maintain the bog's water level at 756.90 feet MSL. Over the next few years, Zink's flooding problems became more severe, and in 1995, Zink asked Khwaja to reduce the bog's water level so as to stop the flooding on Zink's

land. When Khwaja refused, Zink sued, alleging that Khwaja's actions unreasonably interfered with the use and enjoyment of his land and that these actions constituted a private nuisance. In response, Khwaja denied that he had "caused any flooding whatsoever to the Zink property," and he asserted that Zink's property was subject to certain "prescriptive rights." Following a bench trial, the circuit court issued its Findings of Fact and Conclusions of Law in which it determined that (1) Zink failed to prove that Khwaja's conduct in maintaining the bog's water level caused damage to Zink's property; (2) Khwaja's conduct in maintaining the bog's water level was not unreasonable and did not constitute a private nuisance, and (3) Khwaja had established a prescriptive right to maintain the bog's water level at 756.90 feet MSL.

¶ 6.    Based on these findings and conclusions, the court entered judgment in favor of Khwaja. Zink moved for reconsideration, which the court denied. As part of its judgment, the court ordered Zink to pay Khwaja's allowable costs and disbursements. Khwaja submitted a Bill of Costs which included over $24,000 in actual attorneys' fees, to which Zink objected. The court denied Khwaja's request for actual attorneys' fees and ordered that fees be reduced to the statutory attorney fee award of $100. Zink appeals the judgment entered in favor of Khwaja, and Khwaja cross-appeals the order denying his recovery of actual attorneys' fees.

## ANALYSIS

¶ 7.    We begin by considering Zink's private nuisance claim. To establish a claim for private nuisance, Zink must prove that Khwaja's conduct is the "legal cause" of "an invasion of [his] interest in the private use and enjoyment of land." *See Stunkel v. Price Elec.*

*Coop.*, 229 Wis. 2d 664, 668–69, 599 N.W.2d 919 (Ct. App. 1999) (quoting RESTATEMENT (SECOND) OF TORTS § 822 (1979)). Zink must also establish that the invasion is both intentional and unreasonable.[3] *See id.* The circuit court determined that Zink failed to prove that the damages he incurred were caused by Khwaja's actions, and that the actions undertaken by Khwaja in maintaining the water level of his cranberry bog were not unreasonable. Accordingly, the court dismissed Zink's private nuisance claim.

¶ 8.    We turn first to the circuit court's determination that Zink failed to establish that Khwaja's actions caused Zink to incur damages on his property. This determination is a finding of fact which we will only set aside if it is clearly erroneous, that is, if it is contrary to the great weight and clear preponderance of the evidence. *See* WIS. STAT. § 805.17(2); *see also Siker v. Siker*, 225 Wis. 2d 522, 527–28, 593 N.W.2d 830 (Ct. App. 1999).

¶ 9.    The court determined that Zink failed to establish that Khwaja's actions were the legal cause of the flooding after hearing testimony from a number of individuals. The bog's former owner and his son testified that the flowage and drainage patterns in the bog had changed significantly during the mid- to late–1980's, and one of Zink's northern neighbors testi-

[3] The Restatement of Torts provides that an invasion can either be (1) "intentional and unreasonable," or (2) "unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." *See* RESTATEMENT (SECOND) OF TORTS § 822 (1979). Khwaja does not dispute that he intentionally maintains the water level in his cranberry bog, so we do not address the requirements for liability for an "unintentional" invasion.

fied that the flowage and drainage patterns on his land had also changed around this time. Another of Zink's neighbors testified that he had conducted some excavating activities on his land in 1989 or 1990 which affected the rate at which his land drained onto Zink's "downstream" property. This testimony suggests that the flooding Zink experienced may have been caused by other events and not by the actions of the bog's owner.

¶ 10. The court also heard testimony from an engineer who was hired by Zink to analyze the drainage of surface water from Zink's property and the cranberry marsh. After the engineer admitted that the model he used to conduct his analysis was intended to be used on discernable waterways instead of standing surface water, and that he had to "assume" a flow of water in order to apply the model to the surface water on Zink's land, the court found that his study "lack[ed] credibility" and "fail[ed] to establish the proposition for which it [was] offered." *See Schorer v. Schorer*, 177 Wis. 2d 387, 396–97, 501 N.W.2d 916 (Ct. App. 1993) (holding that " '[t]he weight and credibility to be given to the opinions of [expert witnesses] is uniquely within the province of the fact finder'—in this instance, the trial court" (citation omitted)).

■

¶ 11. Based on the testimony of these witnesses, as well as other evidence in the record, the circuit court found that Zink had not proven that the actions taken by Khwaja since he acquired the bog in 1990 were the legal cause of any damages to Zink's property. After reviewing the record, we conclude that the court's finding on causation is not clearly erroneous. Because we conclude that Zink failed to establish the "causation" element of his nuisance claim, we need not consider the circuit court's analysis of the remaining elements of

Zink's claim. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (concluding that if a decision on one point disposes of an appeal, we will not decide other issues raised). Accordingly, we do not address whether Khwaja's action in maintaining the water level of the bog was a "reasonable" use of his property as the circuit court concluded.

¶ 12.   Similarly, we do not address whether the circuit court erred when it concluded that Khwaja had acquired a prescriptive easement to maintain the water level of his cranberry bog at 756.90 feet MSL, because it is not necessary for us to do so. The circuit court addressed the prescriptive easement issue only after concluding that Zink's suit should be dismissed for failure to prove his nuisance claim. Zink claims that this renders the court's decision "illogical and inconsistent" because, in order to acquire a prescriptive right to flood Zink's property, Khwaja would have had to have caused flooding on Zink's property for a number of years, and thus, to have caused the property to be damaged. We do not agree that the circuit court's treatment of the prescriptive easement issue as an alternative rationale for its decision detracts in any way from its earlier finding on causation.[4]

---

[4] The circuit court acknowledged that it was not obligated to address the prescriptive easement issue, explaining at the hearing on Zink's motion to reconsider that it had only done so because of a possible appeal:

> The adverse possession prescriptive easement concerns were presented to me by the defendant who raised those as an affirmative defense. . . . I had some sense at the time that perhaps this matter would be better decided simply by saying, as so often the Court of Appeals does in its ruling, since the matter has been decided on step number one, the other matters are not addressed. That's good, but it does pose a hardship and often means a second trip back to the Court of Appeals to address those issues in the

¶ 13. We turn next to Khwaja's cross-appeal. Khwaja contends that the circuit court erred when it denied his motion for actual attorneys' fees under WIS. STAT. § 823.08(4). Whether § 823.08(4) allows Khwaja to recover his actual attorneys' fees is a question of statutory interpretation which we decide de novo. *See Timm v. Portage County Drainage Dist.*, 145 Wis. 2d 743, 754, 429 N.W.2d 512 (Ct. App. 1988). The objective of our review is to ascertain the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). To discern this intent, we look first to the plain language of the statute. *See id.* If the plain language of the statute clearly sets forth the legislature's intent, we look no further and simply apply its language to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the statute's language is ambiguous, we turn to extrinsic aids such as the legislative history, scope, context and purpose in order to determine the legislature's intent. *See id.*

¶ 14. WISCONSIN STAT. § 823.08(4)(b) provides that "the court shall award litigation expenses to the defendant in any action in which an agricultural use or agricultural practice is alleged to be a nuisance if the agricultural use or agricultural practice is not found to be a nuisance." Section 823.08(4)(a) defines "litigation expenses" to include "reasonable attorney, expert witness and engineering fees. . . ." Zink does not dispute that Khwaja's cranberry growing constitutes an "agri-

event that the first one is successfully challenged. . . . [O]n the balance, I thought it better to take a shot at both [claims] and try to reduce the number of times you folks would have to go to the Court of Appeal, by addressing both. . . .

cultural use or practice."[5] Zink argues, however, that § 823.08(4) does not apply to his nuisance claim against Khwaja because this litigation pits one agricultural user against another agricultural user. We disagree.

¶ 15. Zink finds support for his proposed "farmer-plaintiff exception" to the award of reasonable attorneys' fees under WIS. STAT. § 823.08(4) in the legislative purpose behind the "right-to-farm" statute:

> The legislature finds that development in rural areas and changes in agricultural technology, practices and scale of operation have increasingly tended to create *conflicts between agricultural and other uses of land*. The legislature believes that, to the extent possible consistent with good public policy, the law should not hamper agricultural production or the use of modern agricultural technology. The legislature therefore deems it in the best interest of the state to establish limits on the remedies available in those conflicts which reach the judicial system. . . .

WIS. STAT. § 823.08(1) (emphasis added). According to Zink, subsection (1) of the statute establishes that the legislature intended to protect agricultural uses from litigation on behalf of "other uses," that is, non-agricultural land uses. Thus, he argues that when the statute is read in its entirety, the language of subsection (4) becomes ambiguous because its language is capable of being understood in two or more different ways. *See Kluth v. General Cas. Co.*, 178 Wis. 2d 808, 815, 505 N.W.2d 442 (Ct. App. 1993). Zink contends that when

---

[5] "Agricultural practice" is defined as "any activity associated with an agricultural use," and the "raising of fruits, nuts and berries" is considered to be an "agricultural use." *See* WIS. STAT. § 823.08(2)(a) and (b); WIS. STAT. § 91.01(1).

§ 823.08(4) is read in conjunction with § 823.08(1), it is possible to interpret § 823.08(4) as applying when either (1) any plaintiff brings a nuisance suit against an agricultural user, or (2) only when a non-agricultural-user brings a nuisance suit against an agricultural user.

¶ 16.   The problem with Zink's argument is that nothing in WIS. STAT. § 823.08(4) so much as hints at the second possibility. We acknowledge that when interpreting a statute, we are to consider the statute as a whole. *See Elliott v. Employers Mut. Cas. Co.*, 176 Wis. 2d 410, 414, 500 N.W.2d 397 (Ct. App. 1993). Zink would have us look to the legislative purpose set forth in § 823.08(1) in order to create an ambiguity in subsection (4) of the statute. Zink's approach, however, reverses the proper order for our inquiry, which, as we have stated, requires that we first look to the statutory language at issue; only if an ambiguity presents itself do we then consult other indications of legislative intent, such as a statement of legislative purpose. The plain language of § 823.08(4) unequivocally mandates the recovery of reasonable attorneys' fees by a defendant who prevails "in *any action* in which an agricultural use or agricultural practice is alleged to be a nuisance" (emphasis added). We need look no further to ascertain the legislature's intent.[6]

---

[6] The creation of an exception to WIS. STAT. § 823.08(4) for "farmer-plaintiffs" is the legislature's prerogative, not ours. Our response to another litigant who urged us to employ a statute's "obvious legislative purpose" to defeat its "literal meaning" bears repeating. *See Madison Teachers, Inc. v. Madison Metro. School Dist.*, 197 Wis. 2d 731, 754, 541 N.W.2d 786 (Ct. App. 1995). We said:

## CONCLUSION

¶ 17.    For the reasons discussed above, we affirm the judgment dismissing Zink's nuisance claim and reverse the order denying Khwaja's motion for reasonable attorneys' fees. Accordingly, we remand for the entry of an order consistent with this opinion.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.

[F]or us to conclude that [the statute] does not mean what it says would be judicial legislation at its worst. When the constitutional body vested with the obligation of enacting the laws of this State consistently uses certain words in a single sense, we must assume that the legislature expressed its intent in those very words. To nullify that intent on the basis of a supposedly unfulfilled purpose would exceed our judicial function, in the absence of extraordinarily clear and convincing evidence that the legislature failed to express what it meant. We cannot rewrite the statute to cover the district's desired construction of it. If the statute requires curative action, the remedy is with the legislature, not the courts.

*Id.* at 755 (citing *La Crosse Hosp. v. La Crosse County*, 133 Wis. 2d 335, 338, 395 N.W.2d 612 (Ct. App. 1986).