# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 18, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1071**

Cir. Ct. No. 2023TP6

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO F.R.W., A PERSON UNDER THE AGE OF 18:

A.M.D.,

   PETITIONER-RESPONDENT,

 V.

G.R.B., JR.,

   RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Fond du Lac County: DOUGLAS R. EDELSTEIN, Judge. *Affirmed.*

¶1 GUNDRUM, P.J.[1] Following a fact-finding hearing on Anaya Daniel's petition to terminate Gerald Bartel's parental rights to their daughter, Franny,[2] a jury found that Bartel had abandoned Franny. The circuit court subsequently terminated Bartel's parental rights to Franny after determining that doing so was in her best interest.

¶2 Bartel now appeals, asserting that the circuit court erred in denying his motion for judgment notwithstanding the verdict (JNOV) as well as in denying his motion to dismiss the petition on the bases that Daniel had unclean hands in pursuing the petition and/or that the abandonment statute as applied to him violated his substantive due process rights. Daniel and Franny's guardian ad litem (GAL) contend the circuit court did not err. For the following reasons, we conclude the court did not err, and we affirm.

### *Background*

¶3 Franny was born in January 2014. Alleging Bartel had not seen Franny since February 2018, had not contacted Daniel in regards to Franny since August 2018, had no good cause for these failures, does not provide care or support for or show interest in Franny, and does not have a substantial parental relationship with Franny, Daniel filed a petition in March 2023 to terminate Bartel's parental rights to Franny on the grounds of abandonment and failure to assume parental responsibility. Following a fact-finding hearing to determine if either of these grounds were met, a jury found Daniel proved the ground of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Gerald Bartel, Anaya Daniel and Franny are all pseudonyms.

abandonment but not the ground of failure to assume parental responsibility. Near the close of the hearing, Bartel moved for JNOV, which motion the circuit court denied. With only one ground needed to proceed, the court held a disposition hearing. Prior to taking evidence at that hearing, the court denied a motion by Bartel to dismiss the petition on the bases that Daniel had unclean hands and his substantive due process rights had been violated. After hearing testimony, the court determined that termination of Bartel's parental rights to Franny was in Franny's best interests. Daniel appeals. Additional facts will be discussed as needed below.

### *Discussion*

¶4      Termination of parental rights proceedings [TPR] involve two phases. In the first phase, the [circuit] court determines whether grounds exist to terminate a parent's rights to his or her child. During the grounds phase, "the parent's rights are paramount." Moreover, during the grounds phase, "the burden is on the government, and the parent enjoys a full complement of procedural rights."

     If the court determines that grounds for termination of parental rights have been proven, thereby finding the parent unfit, the court proceeds to the second phase and determines whether it is in the child's best interest to terminate parental rights. In this dispositional phase of the TPR proceeding, the entire focus of the proceeding shifts to the best interest of the child.

*Kenosha Cnty. Dep't of Hum. Servs. v. Jodie W.*, 2006 WI 93, ¶10 n.10, 293 Wis. 2d 530, 716 N.W.2d 845 (citations omitted).

¶5      One ground for termination of parental rights is abandonment. As relevant here, abandonment is established if the petitioner shows by clear and convincing evidence that: "The child has been *left* by the parent with any person, the parent knows *or could discover* the whereabouts of the child and the parent has

failed to visit or communicate with the child for a period of 6 months or longer." WIS. STAT. §§ 48.415(1)(a)3. (emphasis added), 48.31(1). Even if the above elements are shown, however, abandonment is not established if the respondent-parent proves by a preponderance of the evidence that he or she had "good cause" for failing to visit and communicate with the child throughout the relevant time period. *See* § 48.415(1)(c).

*Motion for Judgment Notwithstanding the Verdict*

¶6      Bartel contends the circuit court erred in denying his JNOV motion following the jury's finding of abandonment at the fact-finding hearing. On appeal he asserts his motion should have been granted because Daniel had moved multiple times with Franny and never informed Bartel as to their whereabouts, and thus, he never "left" Franny with Daniel as required to establish abandonment under WIS. STAT. § 48.415(1)(a)3. We conclude the court did not err.

¶7      Our Supreme Court has stated that a JNOV motion

> admits for purposes of the motion that the findings of the verdict are true, but asserts that judgment should be granted the moving party on grounds other than those decided by the jury. Accordingly, a court should enter JNOV where the facts found by the jury are not sufficient as a matter of law to constitute a cause of action.

***Management Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.***, 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996) (citation omitted). We review de novo a circuit court's ruling on a motion for JNOV. ***Id.***

¶8      Again, to find that Bartel abandoned Franny, the jury here needed to find that Bartel "left" Franny with Daniel, knew *or* "could [have] discover[ed]" Franny's whereabouts, and "failed to visit or communicate with" Franny "for a

4

period of 6 months or longer." *See* WIS. STAT. § 48.415(1)(a)3. The jury also needed to find that Bartel failed to show he had good cause for these failures. In his appellate briefing, Bartel specifically asserts he never "left" Franny with Daniel because Daniel "took Franny away from Mr. Bartel without permission, and then thwarted his ability to stay in contact with her by blocking him, changing her name, and moving no fewer than nine times without giving him notice or her new address."

¶9 For legal support, Bartel relies on our decision in ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 530 N.W.2d 34 (Ct. App. 1995); however, he only cites to the portions of that case that, read out of context, favor his position. In ***Rhonda R.D.***, Rhonda and Franklin were married and lived together with their newborn son Christopher in Washington State. Rhonda moved to Wisconsin with Christopher, initiated divorce proceedings in Wisconsin, and was granted sole legal custody and primary placement. ***Id.*** at 689. Several years later, Rhonda petitioned to terminate Franklin's parental rights on the ground of abandonment, alleging Franklin had not seen Christopher in over four years and had not attempted to see him other than one attempt two years prior to her petitioning; Franklin had only written to Christopher a few times during those four years; and Franklin was several thousand dollars in arrears on payment of child support and told her he would not pay child support. ***Id.*** at 690.

¶10 Franklin moved to dismiss the petition in part because Rhonda had taken Christopher to Wisconsin without his permission and thus he had not "left" Christopher with her, as required to establish abandonment under WIS. STAT. § 48.415(1)(a)3. The circuit court denied Franklin's motion, concluding that the term "left" includes, as we phrased it, "letting a child continue in such a situation."

*Rhonda R.D.*, 191 Wis. 2d at 690-691. Following an evidentiary hearing in the grounds phase, a jury found that Franklin had abandoned Christopher. *Id.* at 692.

¶11 On appeal, Franklin again claimed, as we phrased it, that the term "left" in WIS. STAT. § 48.415(1)(a)3. "refers only to the initial circumstance that separated the parent from the child and cannot apply to the parent's conduct once that separation has occurred for other reasons—in this instance, Rhonda's taking Christopher to Wisconsin and then being awarded sole custody." *Rhonda R.D.*, 191 Wis. 2d at 703. We disagreed with Franklin's interpretation of "left," instead concluding that "left" refers to both circumstances.

¶12 Admittedly, in writing the decision, we sent mixed signals, and Bartel focuses only on the signal that benefits him. Understandably, he focuses on our statement that "[i]n addition to having 'left' a child with another person, the respondent parent *must know* where the child is and have failed to visit or communicate with the child" for the required time period. *Id.* at 707 (emphasis added). This statement of course is favorable to him because evidence was presented at the fact-finding hearing in the grounds phase here that indicated he did not know where Franny was. What Bartel fails to direct us to, however, is our *Rhonda R.D.* interpretation of WIS. STAT. § 48.415(1)(a)3. that "left" "appl[ies] both to those situations where the parent actively places the child with another person *and* to those situations where the parent does not do so, but 'knows *or could discover* the whereabouts of the child and the parent has failed to visit or communicate with the child'" for the required time period. *Rhonda R.D.*, 191 Wis. 2d at 706 (emphasis added; quoting § 48.415(1)(a)3.). Obviously, this holding, which is at odds with the statement Bartel focuses on, directs the circuit court to consider whether even if the respondent parent did not *know* the

6

whereabouts of the child, abandonment can still be shown if the parent could have discovered the child's whereabouts.

¶13    For two reasons, we conclude that our "or could discover" statement is our true holding from *Rhonda R.D.*  First, with our last comment in *Rhonda R.D.* related to this issue, we stated that "[u]nder the construction of [WIS. STAT. § 48.415(1)(a)3.] that we adopt … a parent does not abandon a child simply because the child lives with the other parent, pursuant to a custody order or otherwise.  The focus, rather, is on the respondent parent's *conduct* once the child is living with the other parent." *Rhonda R.D.*, 191 Wis. 2d at 707 (emphasis added).  The "must know" statement that Bartel directs us to is concerned with the respondent parent's knowledge, not his or her "conduct."  The "knows or could discover" statement, by contrast, invites an examination of the respondent parent's conduct.  Secondly, and significantly, similar to how § 48.415(1)(a)3. is phrased today, at the time of *Rhonda R.D.*, it read:  "The child has been left by the parent with a relative or other person, the parent knows *or could discover* the whereabouts of the child and the parent has failed to visit or communicate with the child" for the required time period.  *Rhonda R.D.*, 191 Wis. 2d at 713 (Dykman, J., dissenting; emphasis added).  Thus, our "must know" statement is not entirely consistent with the plain language of the statute while our "knows or could discover" statement is.

¶14    Here, as part of its finding that Bartel abandoned Franny, the jury specifically found that Bartel "kn[e]w or could … have discovered [Franny's] whereabouts," "fail[ed] to visit or communicate with [her] for a period of 6 months or longer," and Bartel did not meet his burden to show he had "good cause for … fail[ing] to visit with [her] during that period."  Evidence presented at the fact-finding hearing supported all of these findings.  Specifically related to the

"kn[e]w or could … have discovered" and "good cause" language, there was evidence presented that Bartel knew Daniel's telephone number[3] but did not leave voice messages and eventually stopped calling. Bartel never called the police, pursued an Amber alert, or moved the court to hold Daniel in contempt for moving with Franny without notifying him or the court. Furthermore, Bartel does not argue that the circuit court erred in denying his JNOV motion under the true holding of *Rhonda R.D.*[4]

*Unclean Hands*

¶15 Following the abandonment determination, Bartel moved the circuit court to dismiss the petition on the bases that Daniel had unclean hands and Bartel's substantive due process rights were violated. We have explained that:

> "For relief to be denied a plaintiff in equity under the 'clean hands' doctrine, it must be shown that the alleged conduct constituting 'unclean hands' *caused* the harm from which the plaintiff seeks relief." "The court must clearly see that it is the fruit of *his own* wrong, or relief from the consequences of *his own* unlawful act, which the plaintiff seeks, before his action can be dismissed."

---

[3] Even though Bartel asserts that Daniel "thwarted his ability to stay in contact with [Franny] by blocking him" from calling Daniel, the evidence on this point was in dispute before the jury. While Daniel admitted she blocked Bartel from calling for a short while during her pregnancy, she also testified he was unblocked for the vast majority of the four-year time period that he did not contact Franny, Daniel had not changed her phone number, and her phone records—which were entered into evidence—showed no calls to Daniel from Bartel's phone number during these time periods. Bartel did not provide any telephone records of his own to show he had attempted to call Daniel during the relevant time period.

[4] On appeal, Bartel asserts that "[t]he central question" related to his JNOV motion "is the meaning of the statutory term 'left' in the context at hand." Although neither Daniel nor the GAL raise the point in their appellate briefs, the record indicates Bartel never raised this "central question" with the circuit court as part of his argument in support of his JNOV motion.

*Timm v. Portage Cnty. Drainage Dist.*, 145 Wis. 2d 743, 752-53, 429 N.W.2d 512 (Ct. App. 1988) (first emphasis added; citations omitted). "Whether to award the defense of unclean hands is within the circuit court's discretion." *Hatch v. Cuchna*, No. 2011AP1222, unpublished slip op. ¶30 (WI App Dec. 20, 2012) (citing *Timm*, 145 Wis. 2d at 752). We will affirm a circuit court's discretionary decision if the court "examined the relevant facts, applied the correct standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶16     Bartel asserts Daniel "cannot prevail on a petition to terminate Mr. Bartel's parental rights on grounds of abandonment when the lack of contact between Mr. Bartel and Franny was [the] 'fruit' of Ms. Daniel's own 'wrongful or unlawful course of conduct.'" He adds that Daniel repeatedly failed "to apprise Mr. Bartel and the court of her relocations" with Franny, in violation of WIS. STAT. §§ 767.481(1)(a) and 948.31(3)(c). He claims the court erroneously exercised its discretion because "[t]he court found that the issue of Ms. Daniel's unlawful moves was addressed at trial and the jury was instructed on the good cause defense. However, the clean-hands doctrine is applied *by the court* in its exercise of discretion."

¶17     At the fact-finding hearing, the jury determined by "clear, satisfactory, and convincing [evidence], to a reasonable certainty," that Bartel "knew or could have discovered the whereabouts of [Franny]." Before the jury answered this question, the circuit court instructed the jury that "[a] parent 'could have discovered the whereabouts of a child' if, through reasonable efforts by that parent, they would have discovered the location where the child resided or could be contacted." With its verdict on this question then, the jury found that Bartel

would have discovered "the location where [Franny] resided or could be contacted" if he had made reasonable efforts.

¶18 Then, through jury instructions and verdict answers, it is clear Bartel failed to carry his burden to convince the jury he had good cause for failing to connect with Franny. As part of that consideration, the circuit court had instructed the jury that in determining whether Bartel had good cause, it could consider

> whether [Bartel] had a reasonable opportunity to visit or communicate with [Franny] or communicate with [Daniel]; attempts to contact [Franny]; whether [Daniel] prevented or interfered with efforts by [Bartel] to visit or communicate with [Franny]; any other factors beyond the parents control which precluded or interfered with visitation or communication; and all other evidence presented in this trial on this issue.

Thus, the court was correct in its assessment that in the jury's finding that Bartel had abandoned Franny, it would have considered the presented evidence of Daniel blocking his phone number for a time, changing her last name (due to getting married), and moving multiple times without notifying Bartel; yet, considering all the evidence, it nonetheless found that Bartel had abandoned Franny.

¶19 Consistent with Bartel's appellate complaints, it is true that in addressing his unclean hands/substantive due process motion, the circuit court did discuss that the jury had determined, despite the presented evidence indicating Daniel had moved without notifying Bartel, that the evidence showed he nonetheless knew "or could have discovered [Franny's] whereabouts" and also that he did not have good cause for failing to visit her. Again, this latter determination called for the jury to consider Bartel's attempts to contact Franny as well as whether Daniel "prevented or interfered with" efforts by Bartel to connect with Franny.

¶20    But, in considering Bartel's plea that Daniel should not prevail with terminating Bartel's parental rights because she had unclean hands, the circuit court did not simply defer to the jury's findings. In response to Bartel's unclean hands contention, the circuit court stated, "So on an unclean hands analysis, does the [c]ourt have to find that one party is more at fault than the other? Could I not find that both have unclean hands?" The court indicated it "could agree" Daniel did not do as required to notify Bartel if Daniel moved with Franny, but noted it had previously addressed that Bartel had failed to "present [anything] during the early stages [to this court] that would have convinced [the court] that, as a matter of law, she could not present the case" for termination. The court added:

> I do believe there is unclean hands here, but to the extent that that, alone, would merit the [c]ourt to make a finding in favor of one party, I don't think that is completely established. I think I can make an argument as to why both parties bear some form of responsibility here which is supported by the record.
>
> Nonetheless, as for a judicial remedy, I do not find that there is sufficient factual basis to grant relief for Mr. [Bartel] following the doctrine[] of unclean hands.

Thus, the court made its own determination that it would not apply the doctrine of unclean hands to dismiss Daniel's petition in significant part because Bartel also "b[ore] some form of responsibility" for his failure to visit or communicate with Franny.

¶21    As indicated, for the circuit court to properly dismiss Daniel's petition based upon unclean hands, Bartel would have to have demonstrated that "the alleged conduct constituting 'unclean hands' *caused the harm* from which the plaintiff seeks relief. The court must *clearly see* that it is the fruit of [Daniel's] *own* wrong, or relief from the consequences of [her] *own unlawful* act, which the plaintiff seeks, before [her] action can be dismissed." *See **Timm***, 145 Wis. 2d at

11

752-53 (emphasis added; citation omitted). The circuit court here was essentially saying that it was not Daniel's actions alone that "caused the harm" of Bartel failing to visit or communicate with Franny but that Bartel's own lack of effort contributed to that. Thus, the court concluded that Bartel should not benefit from Daniel's unclean hands because of his own unclean hands. We conclude the circuit court did not erroneously exercise its discretion with this determination.

*Substantive Due Process*

¶22 Bartel claims WIS. STAT. § 48.415(1) is unconstitutional as applied to him in this case, which is an issue of law we review de novo. *Jodie W.*, 293 Wis. 2d 530, ¶22. This issue is not particularly well developed, but Bartel does direct us to one case, *Jodie W.*, and claims it is instructive for us. *Jodie W.* does not aid Bartel.

¶23 As the GAL points out, in *Jodie W.*, our supreme court determined that Jodie W.'s substantive due process rights were violated in large part because her parental rights were terminated due to her failure to meet the conditions for return of her child established by the circuit court, yet one of the key conditions—maintaining a suitable residence for the safe return of the child—was impossible for her to meet because she was incarcerated and would remain so for some time. *Id.*, ¶¶10, 47, 56. The *Jodie W.* court was also critical of the fact that the circuit court had not "consider[ed] other relevant facts and circumstances particular to Jodie" during the grounds phase. *Id.*, ¶52. In the present case, Bartel was not incarcerated, and while Daniel may have made it more difficult for Bartel to connect with Franny, the circuit court correctly observed—and the jury apparently also found—it was certainly not impossible. Moreover, as indicated heretofore,

"other relevant facts and circumstances particular to" Bartel were considered during the grounds phase. *See id.*

¶24 At bottom, Bartel's substantive due process "issue" is largely a rehashing of his "unclean hands" issue. He asserts that "it may not have been *literally* impossible for Mr. Bartel to find Ms. Daniel, but his efforts were beyond reasonable where Ms. Daniel intentionally erected barriers to his ability to parent Franny and he was responsible for parenting two other young children while maintaining a residence and job…. His lack of contact with Franny was out of his control." As noted, the jury was presented with the challenges Daniel purportedly caused Bartel in maintaining contact with Franny, but it was also presented with the efforts Bartel himself did—and did not—make to re-establish contact with her. And in the end, after considering all of this, the jury concluded that Bartel had in fact abandoned Franny and that he did not have good cause for doing so. And, as noted, the circuit court understandably concluded that Bartel himself bore some of the responsibility for his failure to connect with Fanny over those years due to his lack of sufficient effort.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.